APPEAL OF BEAR MANUFACTURING CO.

Docket No. 1936.    Submitted May 4, 1925.    Decided September 7, 1925.

Value of patents determined for purposes of inclusion in invested capital and for purpose of depreciation.

*Philip L. Billings, C. P. A.*, for the taxpayer.

*A. Calder Mackay* and *Ward Loveless, Esqs.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This appeal involves a deficiency in income and profits taxes in the amount of $2,637.01 for the calendar years 1919 and 1920. The taxpayer in its original petition assigns as errors the acts of the Commissioner in refusing to permit, (1) the inclusion in invested capital of any value paid in for the purchase of patents from a predecessor corporation, and (2) a deduction from gross income of any annual charge for the extinguishment of the patents. In its amended petition the taxpayer assigns as an additional error the

refusal of the Commissioner to grant relief as requested in a brief filed presumably with the Commissioner. From the pleadings and the evidence offered at the hearing the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a Delaware corporation with its principal office in Rock Island, Ill. It was organized in April, 1917, as the successor of the Sanbro Starter Co., a corporation.

2. The Sanbro Starter Co. was originally organized in 1913 as a partnership. At that time one Sanbro was developing an automobile engine starter. Several persons, mostly members of one family, advanced funds for the purpose of aiding him in perfecting the device and securing a patent thereon. Some time during the years 1913 and 1914, H. W. Dammonn paid Sanbro $2,000 for the then pending application for a patent on the starter.

3. The Sanbro Starter Co. was incorporated about August, 1914, with an authorized capital of $10,000. The capital stock of the corporation was issued to Sanbro and to those persons who had advanced money to him. A patent on the starter was issued February 9, 1915, and assigned to the Sanbro Starter Co.

4. During the year 1915 the Sanbro Starter Co. reimbursed Dammonn in the amount of the $2,000 he had spent in acquiring the right to Sanbro's patent. It also reimbursed him for other expenditures in connection with improvement of the patent, the total amount, including the sum of $2,000, being something over $7,000.

5. The company was successful in its early years and paid high dividends. The greater part of its business was done on a C. O. D. basis, and its only records were a daybook and a cashbook which have since been destroyed. During the period of its existence the company acquired at least one patent in addition to the one originally acquired from Sanbro.

6. In April, 1917, the taxpayer corporation, the Bear Manufacturing Co., was organized with an authorized capital stock of $2,000,000, which was subsequently reduced to $200,000, divided into 20,000 shares with a par value of $10 each. It purchased from the Sanbro Starter Co. all of that company's assets except cash and foreign patents, and assumed its liabilities and issued in payment therefor $106,000 capital stock.

### DECISION.

The determination of the Commissioner is approved in part and disapproved in part, and the deficiency should be computed in accordance with the following opinion. The amount of the deficiency will be settled on consent or on 10 days' notice, under Rule 50.

OPINION.

GRAUPNER: The contentions of the taxpayer are stated above. Nothing was offered at the hearing in regard to the relief which the petition states was requested in a brief and we need not consider that allegation further.

The first assignment of error raises the question as to whether the taxpayer is entitled under section 326 of the Revenue Act of 1918 to include in its invested capital 25 per cent of the capital stock issued in payment for assets acquired from the predecessor corporation, or whether the patents thus acquired should be included in invested capital at an amount in accordance with section 331 of the Act. The Commissioner disallowed the claimed value of the patents for invested capital purposes and computed the tax under section 331 on the finding that 50 per cent or more of the control or interest in the taxpayer remained in the same persons as in the predecessor corporation. No showing was made by the taxpayer that this finding of the Commissioner was erroneous. On this point we have only to determine, then, what amount the predecessor corporation might have included in its invested capital with respect to the patents which it turned over to the taxpayer. This is to be based on the cost of acquisition thereof, including development expenses.

Of the two patents acquired by the taxpayer from its predecessor, evidence was introduced as to the cost of only one. For this one the corporation paid Dammonn $7,000, and we are of opinion that this represents its investment therein for invested capital purposes.

The evidence shows that the value of $90,000 placed upon the patents by the taxpayer in its balance sheets, and in which sum it issued capital stock therefor, was merely an estimate of the money and labor expended in acquiring the patents. It also appears from an examination of the record that the taxpayer's principal witness was somewhat in doubt as to the number of patents this claimed valuation covered. On the evidence we can not find that the cost of acquisition of the patents, including the development expenses to the predecessor corporation, was in excess of $7,000.

The second question here involved is whether the taxpayer is entitled to a deduction from gross income for depreciation of patents. Such deduction, where allowable, must be based on actual cost. On the evidence we hold that the one patent had a value at the date of acquisition of $7,000 and that, as to the other patents, the evidence is insufficient to establish value. The taxpayer is entitled to a deduction for depreciation on the basis of $7,000 as the value of this one patent at the date of its acquisition by the predecessor corporation.

On reference to the Board, ARUNDELL took no part in the consideration.